**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| AARON MCCULLOUGH-BRADSHAW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 24 C 9015 |
| v. | ) | |
| | ) | Judge Kness |
| CITY OF CHICAGO, SERGEANT KENNETH | ) | |
| MESCALL, STAR NUMBER 848, SERGEANT | ) | |
| GEORGE GRANIAS, STAR NUMBER 1731, | ) | |
| JULIO CASTANEDA, STAR NUMBER 17665, | ) | |
| ILIA ACEVEDO, STAR NUMBER 10955, | ) | |
| MARCO CALDERON, STAR NUMBER 14850, | ) | |
| JANET CORTEZ, STAR NUMBER 11573, ERIK | ) | |
| MEJIA, STAR NUMBER 14998, CHARLES | ) | |
| ALVISO, STAR NUMBER 15672, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CITY OF CHICAGO'S MOTION TO DISMISS
COUNT VIII OF THE PLAINTIFF'S COMPLAINT**

Defendant, City of Chicago ("City"), by and through its attorneys, Klein, Thorpe and Jenkins,

Ltd., and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, moves this Court for entry

of an order dismissing Count VIII of the Plaintiff's complaint, with prejudice, and in support thereof

states as follows:

**Introduction**

The events giving rise to this lawsuit involve Chicago Police Department ("CPD") officers

who attempted to serve an Emergency Order of Protection ("EOP") on the Plaintiff, Aaron

McCullough-Bradshaw, at the apartment residence he co-leased and shared with his mother, Lonnett

McCullough ("Lonnett"). The Plaintiff contends that, on September 26, 2022, the CPD officers

violated his constitutional rights when they illegally seized him, used excessive force by tasing him,

subjected him to unlawful detention and prosecution on baseless charges and forced him to endure

1

improper confinement and GPS monitoring. (the "Incident") (Doc. # 1 at ¶ 1). The Plaintiff alleges that several CPD and City widespread customs and practices caused the police officers to violate his constitutional rights.

The Plaintiff reacted to the Incident by filing a ten-count complaint. Eight of the counts – including actions for unlawful seizure (Counts I, II, IV, V), excessive force (Counts III and IV), malicious prosecution (Count VI), unlawful detention (Count VII), and failure to intervene (Count IX) – are alleged against defendant CPD officers pursuant to 42 U.S.C. § 1983. (*Id.* at ¶¶ 193-290). The Plaintiff also alleges a § 1983 *Monell* claim against the City (Count VIII) (¶¶ 270-281). Count X seeks indemnification from the City pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102.

The City's motion to dismiss focuses on Count VIII, the *Monell* claim, that accuses the City of maintaining widespread customs and practices that caused the defendant CPD officers to violate the Plaintiff's constitutional rights. As demonstrated below, Count VIII should be dismissed pursuant to Rule 12(b)(6) because the *Monell* allegations fall well short of meeting the pleading requirements set forth by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*.

## I.     Statement of Facts

The following allegations are taken as true for purposes of the City's Rule 12(b)(6) motion to dismiss. On September 24, 2022, Lonnett contacted the CPD to make a complaint against the Plaintiff for allegedly damaging some furniture in their apartment and making a hole in a wall during an argument. (Doc. # 1 at ¶ 22). Defendant CPD officers Marco Calderon and Janet Cortez responded to Lonnett's call and arrived at the apartment. (*Id.* at ¶ 23). They inspected the residence and found no evidence of the property damage Lonnett reported to the CPD. (*Id.* at ¶ 25). Subsequently, Lonnett obtained an *ex parte* EOP against her son that was entered on September 26, 2022. (*Id.* at ¶¶ 27, 28). Lonnett did not tell her son about the EOP, and he had no notice of the court order.

2

On September 26, 2022, Lonnett called the CPD claiming the Plaintiff violated the EOP. (*Id.* at ¶ 38). Approximately 12 CPD officers responded to Lonnett's call. (*Id.* at ¶ 39). The Plaintiff was inside the apartment preparing for work. He did not know his mother called CPD or that officers were outside the apartment. (*Id.* at ¶¶ 41, 47). The Plaintiff left the apartment and encountered CPD officers who explained an EOP had been issued against him. (*Id.* at ¶¶ 48-51). Without identifying himself or announcing his purpose, a CPD officer made physical contact with the Plaintiff by grabbing him around the midsection and blocking his path. (*Id.* at ¶ 49). Other CPD officers cornered the Plaintiff against a wall restricting his freedom and preventing him from leaving. (*Id.* at ¶ 50). The CPD officers directed the Plaintiff to stay away from the apartment due to the EOP. (*Id.* at ¶¶ 51, 52).

After the CPD officers and the Plaintiff discussed the EOP and what the order prohibited the Plaintiff from doing, the officers allegedly forcibly attempted to seize the Plaintiff's key chain that was visible in his hands. (*Id.* at ¶ 65). When the CPD officers did not immediately gain control of the key chain, at least four of the defendants allegedly grabbed the Plaintiff's arms, shoulders and torso to restrain him while another officer placed handcuffs on one of the Plaintiff's hands. (*Id.* at ¶¶ 67-68). A CPD officer purportedly twice deployed his taser at close range striking the Plaintiff in the chest. (*Id.* at ¶¶ 70-73).

The Plaintiff was transported to the hospital where his injuries were assessed and the taser prongs in his chest were surgically removed. (*Id.* at ¶ 77). The Plaintiff remained handcuffed to his hospital bed. (*Id.* at ¶ 78). He was charged with three misdemeanors for violating the EOP, assault, and resisting arrest, and he was transported to and held overnight at the Cook County jail. (*Id.* at ¶¶ 79-80). At a bond hearing on September 27, 2022, the Plaintiff was released from custody subject to a requirement that he wear a GPS monitoring system that tracked his location to ensure he did not violate the EOP. (*Id.* at ¶ 82). On December 14, 2022, the order of protection against the Plaintiff

was terminated and the civil case related to the protective order was dismissed. (*Id.* at ¶ 90). The Plaintiff's prosecution on the three misdemeanor charges continued after the order of protection ended. At a January 10, 2023, hearing, the court expressed dismay that the Plaintiff remained on GPS monitoring, and it entered an order to remove the Plaintiff from the requirement. (*Id.* at ¶¶ 91-95). At a March 20, 2023, bench trial the prosecution dropped the misdemeanor charges, and no further proceedings were initiated. (*Id.* at ¶ 96-100).

## II. Rule 12(b)(6) Pleading Requirements Under *Twombly* and *Iqbal*

*Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal* guide this Court's consideration of the City's motion to dismiss Count VIII. To survive a Rule 12(b)(6) motion to dismiss, Count VIII must include sufficient factual allegations which, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Dismissal is appropriate if the "allegations [are not] enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact.)" *Twombly*, 550 U.S. at 555 (internal citations omitted); *see Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A court must analyze if the non-conclusory factual allegations, taken as true, set forth facts sufficient to allege each element of the claim and establish a plausible action for relief. *Iqbal*, 556 U.S. at 679-80.

## III. Count VIII Should Be Dismissed Because the Plaintiff Fails to Allege a Plausible *Monell* Claim Against the City

### A. General Principles for § 1983 *Monell* Claims

4

To succeed on a *Monell* claim, a plaintiff must trace a purported constitutional violation to some municipal action so that alleged individual misconduct is "properly attributable to the municipality itself," as the governmental unit cannot be subject to liability under the common law *respondeat superior* doctrine. *LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021). Three types of municipal action may give rise to *Monell* liability under § 1983: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) the constitutional injury was caused by a person with final policymaking authority. *Dean v. Wexford Health Services, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). Municipal inaction also can result in liability if it reflects "a conscious decision not to take action." *Glisson v. Indiana Department of Corrections*, 849 F.3d 372, 381 (7th Cir. 2017).

A *Monell* claim that does not allege municipal action directly caused a constitutional deprivation must demonstrate culpability, i.e., the municipality acted (or failed to act) with deliberate indifference. *Board of the County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 406-07 (1997). "Deliberate indifference" is a stringent standard of fault. *Id.* at 410. Under the deliberate indifference standard, a municipality "must have actual or constructive notice of a problem." *Miranda v. County of Lake*, 900 F.3d 335, 345 (7th Cir. 2018). Deliberate indifference also requires a showing that a municipality made a deliberate choice to follow a course of action. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

*Monell* plaintiffs also must allege plausibly that municipal action was "the 'moving force' behind the federal-rights violation." *Dean*, 18 F.4th at 235 (quoting *Brown*, 520 U.S. at 404). This "rigorous causation standard" requires "a direct causal link" between the challenged municipal action and violation of a plaintiff's constitutional rights. *Id.* Without this stringent causation requirement, municipal liability would collapse into impermissible *respondeat superior* liability or mere "but for" causation. *Brown*, 520 U.S. at 415.

5

**B.**     **Standards for Widespread Custom and Practice *Monell* Claims**

The complaint indicates the Plaintiff proceeds against the City on a widespread custom and practice, or *de facto* policy, theory of municipal liability. (Doc. # 1 at ¶¶ 1, 17, 106, 110, 146, 161, 162, 192).   A *Monell* custom and practice claim requires a widespread practice that "permeates a critical mass of an institutional body." *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015).   The Seventh Circuit has not adopted a bright-line definition as to how many incidents constitute a custom or practice, but it has indicated a plaintiff must allege more than one instance. *Thomas v. Cook Cnty. Sheriff's Dep't.*, 604 F.3d 293, 303 (7th Cir. 2010); *Gable v. City of Chicago*, 296 F.3d 531, 538 (7th Cir. 2002) ("Three incidents where vehicle owners were erroneously told their vehicles were not at Lot 6 do not amount to a 'persistent and widespread practice.'"); *Palmer v. Marion County*, 327 F.3d 588, 596 (7th Cir. 2003) ("Palmer's alleged personal knowledge of two incidents of misconduct by correctional officers in a period of one year certainly fails to meet the test of a widespread unconstitutional practice by the Jail's staff that is so well settled that it constitutes a custom or usage with the force of law.").

The incidents alleged by a plaintiff need to be sufficiently similar to support an inference of a broader pattern.   A "splatter-paint picture of scattered violations" fails to allege sufficiently a plausible municipal custom or practice. *Montgomery v. Village of Phoenix, Illinois*, 2022 WL 2316232 at * 3 (N.D.Ill. June 28, 2022); *Jackson v. City of Chicago*, 2021 WL 3883111 at * 5 (N.D.Ill August 31, 2021).   *Monell* plaintiffs cannot rely solely on their own personal experience in alleging an actionable widespread custom and practice claim. *Dean*, 18 F.4th at 240 ("[w]e have repeatedly rejected *Monell* claims that rest on the plaintiff's individualized experience without evidence of other constitutional violations.").   Furthermore, a gap in time between alleged incidents of unconstitutional conduct mitigates against a court reasonably inferring the existence of a municipal custom and practice as opposed to "random events" that cannot provide the foundation for a *Monell* claim. *Thomas v. City of Markham*, 2017 WL 4340182 at * 5 (N.D.Ill. September 29, 2017) ("[T]here remains a five-year gap between those events

6

[excessive force incident involving Markham police officers] and the instant incident. This court cannot reasonably infer a 'true municipal policy' was at work here[.]").

### C.     Standards for Failure to Train *Monell* claims

The Plaintiff, in alleging the City's failure to train and supervise it police officers, asserts municipal liability based on inaction. One of the difficulties with alleging claims involving inaction is that a "failure to do something could be inadvertent." *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 378 (7th Cir. 2020). Deliberate indifference in the context of a failure to train claim means a municipality "(1) failed to provide adequate training in light of foreseeable consequences or (2) failed to act in response to repeated complaints of constitutional violations by its officers." *Miranda*, 900 F.3d at 345. To plead sufficiently a claim for failure to adequately train police officers, a plaintiff must plausibly allege that municipal policymakers "deliberately chose a training program which would prove inadequate." *City of Okla. v. Tuttle*, 471 U.S. 808, 823 (1985). Given the high threshold a plaintiff must meet when alleging a failure to train action against a municipality, *Monell* liability "is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

### D.     The Plaintiff Fails to Allege Plausible *Monell* Custom and Practice Claims Against the City

#### 1.     The Plaintiff does not plausibly allege that the CPD has a custom and practice of failing to detect, deter and discipline police officer misconduct that results in widespread use of excessive force

The Plaintiff alleges in conclusory fashion that the City failed to exercise meaningful discipline, oversight or scrutiny over the CPD defendant officers and exhibited deliberate indifference to "the plainly foreseeable risks of failing to have adequate disciplinary mechanisms" in place to detect, deter and discipline police misconduct, including use of excessive force. (Doc. 1 # at ¶ 122). He further concludes that, "[t]he actions of the Defendant Officers resulted from policies, practices, customs,

and usages of the City," including "failing to adequately discipline CPD officers." (*Id.* at ¶ 274). The allegations the Plaintiff sets forth in pleading this purported unconstitutional custom and practice include references to the Department of Justice ("DOJ") 2017 Report (the "DOJ Report") regarding its investigation of the CPD attached as an exhibit to the Complaint. (*Id.* at ¶¶108-9). The Plaintiff alleges the DOJ Report demonstrated that the CPD accountability systems purportedly are "broadly ineffective" at deterring or detecting police misconduct and at holding officers accountable when they violate the law or CPD policy. (*Id.* at ¶ 111). The Plaintiff also offers the disciplinary histories of two of the defendant CPD officers in support of his claim that he suffered injury due to the City's custom and practice of failing to detect, deter and discipline police officer misconduct. (*Id.* at ¶¶ 112-118).

a.    **Recent Northern District critiques of the DOJ Report as a basis for *Monell* custom and practice claims**

Northern District of Illinois judges, in several recent opinions, have noted the age of the DOJ Report, questioned its continued relevance for custom and practice claims, and dismissed *Monell* causes of action. For instance, in *Taylor v. City of Chicago*, the court commented that, " . . . the passage of time since the DOJ report diminishes its usefulness as an allegation of the practices in place at the time of Taylor's seizure. Without anything in the complaint to suggest that the practices found by DOJ investigators were still in place two years later, the report is a non sequitur." 2021 WL 4523203 at * 3 (N.D.Ill. October 4, 2021) (Judge Shah). The court in *Williams-Saddler v. Lancaster* agreed with *Taylor*, noting that "a seven-year-old report has little to say about the relevant state of affairs in 2023." 2024 WL 1677407 at * 2 (N.D.Ill. April 18, 2024) (Judge Durkin). The judge in *Higuera v. City of Chicago* characterized the DOJ Report as "stale" and remarked, "[t]he more time that passes, the more stale things get. The more time that passes, the weaker the inference about old material." Case No. 22 CV 964, Transcript of Proceedings before the Honorable Steven C. Seeger on February 22, 2024, attached and referred to herein as **Exhibit A** at 47.

8

Here, the incident at issue occurred between September 24, 2022, and September 26, 2022, (Doc. # 1 at ¶ 17), five years after issuance of the DOJ Report. In the years leading up to the DOJ Report, CPD procedures and processes for deterring or detecting police misconduct and holding officers accountable allegedly were ineffective and purportedly contributed to a pattern of unconstitutional conduct within the police department. But the complaint does not allege adequately that the same purportedly ineffective means for deterring and detecting police misconduct existed in September 2022. Further, the Plaintiff asserts conclusory allegations summarizing findings in the DOJ Report that lack factual content. For instance, the Plaintiff alleges that, "[t]he DOJ Report highlighted that the CPD's procedures and processes for deterring or detecting officer misconduct and holding officers accountable were ineffective, contributing directly to the pattern of unconstitutional observed within the CPD." (*Id.* at ¶ 109; *see also*, ¶¶ 110-111).

### b. The Plaintiff's does not allege a plausible custom and practice claim through the use of police officer discipline histories

The Plaintiff tries to bolster his failure to detect, deter and discipline *Monell* claim by presenting the number of complaints raised against two of the defendant CPD officers involved in the Incident. (Doc. # 1 at ¶¶ 112-121). The use of CPD officer discipline histories to allege failure to discipline claims does not assure a complaint presents a plausible liability theory that can survive a motion to dismiss. Plaintiffs must specify the nature of the complaints and how they relate to their purported constitutional injuries. *Jones v. City of Chicago*, 2024 WL 4753687 at * 7 (N.D.Ill. November 12, 2024). Failure to explain the nexus between alleged instances of officer misconduct and the deprivations at issue may lead to dismissal of a custom and practice claim. *See, Milan v. Schultz*, 2022 WL 1804157 at * 6 (N.D.Ill. June 2, 2022) ("Merely alleging that many complaints have been filed against the Defendant Officers does not, by itself, allow the Court 'to draw the reasonable inference that the City maintained a policy, custom or practice' of unlawful arrests, fabrication of evidence, and withholding

9

of evidence, or that the City had knowledge of the Defendant Officers' alleged misconduct here."
(quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011))); *Boone v. City of Chicago*, 2018 WL
1014509 at *2 (N.D.Ill. February 22, 2018) (Court finds dozens of misconduct complaints against
defendant officers "do not state a *Monell* claim . . . These are bare factual allegations insufficient to
create an inference that plaintiffs' harm resulted from a widespread City policy or practice of failing
to discipline officers.").

Here, the Plaintiff alleges the types of misconduct complaints raised against two of the
numerous defendant CPD officers. But the allegations do not specify how many use of force or
improper arrest complaints had been made against the two officers, nor does the Plaintiff provide
information as to when the complaints were made. The Plaintiff does allege that the CPD determined
that defendant Office Mescall's taser use in the September 26, 2022, incident was not in compliance
with CPD policy and directives. (Doc. # 1 at ¶ 118). Presumably, the Plaintiff wants the Court to
draw the inference that the officer's allegedly improper taser use during the incident resulted from a
widespread municipal custom and practice of failure to detect, defer and discipline CPD officer
misconduct. But this one instance hardly implies that an alleged *de facto* custom and policy was the
moving causal force for the purported taser usage. A more reasonable inference would be that the
officer's taser use in violation of CPD policy was a "random event," rather than the result of a
widespread City policy. *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008) ("What is needed is
evidence that there is a true municipal policy at issue, not a random event.").

### 2. The Plaintiff fails to allege a plausible CPD custom and practice of encouraging, maintaining and condoning a code of silence and lack of accountability

The Plaintiff contends the CPD maintains a widespread "code of silence" that the City has
known about and encouraged "at all times relevant to this complaint and has not taken action to
address it." (Doc. # 1 at ¶¶ 147-148). The Plaintiff's support for his code of silence theory includes

10

a reference to a 2007 incident involving the cover up of an off-duty CPD officer's assault of a female bartender (*Id.* at ¶ 149); the 2012 *Obrycka* jury verdict finding the City had a widespread custom or practice of a police code of silence (*Id.* at ¶ 150); a 2016 settlement that the City allegedly entered to prevent Mayor Emanuel from testifying in a deposition "to the CPD's code of silence (*Id.* at ¶ 151); a 2016 statement by the then chair of the City's Police Accountability Task Force, Lori Lightfoot, that the code of silence was "institutionalized and reinforced by CPD rules and policies" (*Id.* at ¶ 152); the 2017 DOJ Report (*Id.* at ¶¶ 154-155); a 2020 statement by the Interim Police Superintendent that a code of silence persisted in CPD (*Id.* at ¶ 156); and a 2022 jury verdict in a CPD whistleblower case (*Id.* at ¶ 157).

Most of these allegations pre-date the Plaintiff's incident by five to as many as fifteen years. As such they are "stale," irrelevant to the situation in 2022, and offer diminished usefulness as the gap in time widens. *Williams-Saddler*, 2024 WL 1677407 at * 2; *Higuera*, **Exhibit A** at 47; *Taylor*, 2021 WL 4523203 at * 3. Plaintiff's allegations also suffer from insufficiently tying the purported existence of a code of silence in September 2022 to his specific encounter with the CPD defendants. Plaintiff attempts to make the link by alleging that the *de facto* policy caused the CPD defendants to: (1) improperly serve the EOP and unlawfully detain the Plaintiff in excess of the time required to serve him with the EOP; (2) unlawfully detain the Plaintiff on the unreasonable belief that he violated the EOP when he did not know it existed; (3) use a taser on the Plaintiff despite the other CPD officers maintaining control over the Plaintiff; (4) fail to intervene to prevent the purported unlawful use of force on the Plaintiff; and (5) misrepresent the events that occurred on September 26, 2022, regarding the Plaintiff. (Doc. # 1 at ¶ 160). These allegations fail to sufficiently establish a code of silence as the moving force, the causal nexus, causing the defendant CPD officers to deprive the Plaintiff of his constitutional rights during the Incident. Therefore, the Plaintiff's code of silence based *Monell* claim against the City should be dismissed pursuant to Rule 12(b)(6).

**D.** **Plaintiff Does Not Plausibly Allege Municipal Training and Supervision Failures Caused His Purported Constitutional Injuries**

     **1.** **The Plaintiff does not allege a plausible claim for failure to train and supervise CPD officers on use of force and taser policies**

The Plaintiff's claim that the City fails to train and supervise CPD officers concerning use of force and regarding the department's taser policy depends heavily on the DOJ Report. (Doc. # 1 at ¶¶ 123-129). The complaint presents long sections from the DOJ Report that discuss generally lack of officer training and how CPD provides little incentive for supervisors to hold officers accountable when they stray from department policy and the law. *Id.* at ¶¶ 124-125). The complaint also quotes a finding from the DOJ Report indicating the inadequacy of CPD use of force training. *Id.* at ¶ 127. The closest the Plaintiff comes to relating the DOJ Report to his alleged constitutional injuries occurs when he quotes DOJ Report language finding CPD officers systematically "escalate encounters unnecessarily, use "retaliatory force" against objecting citizens, use unreasonable force to "quickly resolve non-violent encounters," and "CPD's policy permits the use of Tasers in situations where it is unreasonable." *Id.* at ¶ 129.

All the problems with the "stale," dated and "obsolete" use of the DOJ Report that recent Northern District Court opinions have noted in dismissing *Monell* custom and practice claims apply to the Plaintiff's dependence on the DOJ Report in alleging a failure to train and supervise CPD officers on use of force and tasers. The Plaintiff assumes the CPD training and supervision practices did not change from the time of the DOJ investigation and report. Further, the complaint fails to allege that City policymakers consciously chose to implement training and supervision practices they

knew would be inadequate. As a result, the Plaintiff does not allege the requisite culpability or deliberate indifference necessary for a plausible failure to train and/or supervise claim.

In addition to the DOJ Report, the Plaintiff depends on references to a January 2019 consent degree entered in the matter of *State of Illinois v. City of Chicago*, No. 1:17-cv-06260, an independent monitor's reports on CPD progress in making reforms required by the consent decree, comments by the City's former Inspector General, and reports by the Office of the Inspector General concerning CPD's reform efforts to allege the CPD and the City's failure to train and supervise police officers regarding use of force and the department taser policy. *Id.* at ¶¶ 130-145. The Plaintiff's allegations refer to general purported deficiencies in the CPD and the City's progress in meeting consent decree reform standards and implementing use of force training that would "ensure reasonable and constitutional use of force." *Id.* at ¶ 135.

The Plaintiff fails to allege plausibly deliberate indifference on the part of the City. The allegations do not indicate the City made a conscious choice not to implement effective training on use of force and the CPD taser policy. More significantly, the Plaintiff does not allege plausibly that a lack of training by the City in the areas of use of force and the taser policy and purported municipal deliberate indifference to effective training of CPD officers constituted the moving force that proximately caused his alleged constitutional injuries in 2022. The Plaintiff attempts to allege causation by asserting municipal culpability caused "the types of injuries and damages alleged herein" and the City's acts, omissions and systemic failures "caused individuals employed by the CPD, including the Defendant Officers to use excessive and unreasonable force." *Id.* at ¶¶ 145, 146). These allegations fail to provide a nexus linking the City's purported failure to train with the Plaintiff's asserted injuries. *Milan,* 2022 WL 1804157 at * 6. Furthermore, the Plaintiff's causation allegations are conclusory assertions this court should disregard for purposes of the City's motion to dismiss.

13

*Twombley*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 679-80; *McCauley*, 671 F.3d 611, 616 (7th Cir. 2011) (a *Monell* plaintiff cannot simply rely on legal conclusions and conclusory allegations.

### 2.    Plaintiff fails to allege a plausible failure to train and supervise CPD officers regarding the service and enforcement of orders of protection

The Plaintiff also seeks to hold the City liable for its purported failure to train and supervise CPD officers on the service and enforcement of orders of protection. (Doc. # 1 at ¶¶162-192). The Plaintiff does not allege the defendant CPD officers' purported failure to enforce the EOP remedies designated as police-enforced as opposed to court-enforced exemplified a pattern of similar constitutional violations by its officers. Rather, the Plaintiff uses his own experience as the basis for his claim that the City fails to train and supervise CPD officers on how to enforce and serve orders of protection. (*Id.* at ¶¶167-172, 182-183, 186).

The United States Supreme Court, in *City of Canton, Ohio v. Harris*, did not completely foreclose the possibility that a plaintiff might sufficiently allege a failure-to-train claim without showing a pattern of constitutional violations. 489 U.S. 378, 390 & n. 10. However, in *Brown*, the Court indicated that in leaving open such a possibility, it "simply hypothesized that, in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with the specific tools to handle recurring situations." 520 U.S. 397, 409 (1997). The Plaintiff seeks to position his situation as falling within the "narrow range of circumstances" that might allow for a failure-to-train claim based on his single experience by alleging in conclusory fashion that, "it is obvious and easily predictable on the part of the City" that CPD officers likely will cause constitutional violations if they do not receive proper training on service and enforcement of

14

protective orders. (*Id.* at ¶ 181). These conclusory allegations should not be credited in Rule 12(b)(6) proceedings. What the complaint presents is a "random event" that the Plaintiff tries unsuccessfully to inflate into a *Monell* claim. *Taylor v. Hughes*, 26 F.4th 419, 435 (7th Cir. 2022); *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005). Further, the Plaintiff's allegations do not indicate the City made a conscious choice to withhold training on the service and enforcement of orders of protection from CPD officers.

The Plaintiff also fails to allege plausibly that the City's purported shortcomings regarding failure to train and supervise CPD officers on service and enforcement of orders of protection were the moving force causing him to suffer constitutional deprivations. He alleges the City's training failures caused him to suffer "serious physical and psychological injuries, economic harm, and deprivation of liberty." The purportedly inadequate training also caused "a host of adverse and injurious ramifications for the parties in order of protection proceedings." (*Id.* at ¶¶ 184-185). These conclusory allegations do not plead a plausible causal nexus between the City's purported training failures regarding service and enforcement of orders of protection and the injuries the Plaintiff purportedly sustained.

**WHEREFORE,** for all the above-stated reasons, the Defendant City of Chicago respectfully requests that this Honorable Court grant its motion to dismiss Count VIII, with prejudice, and for any other relief deemed just and fail.

City of Chicago

By:      /s/  Allen Wall
            One of its attorneys

Allen Wall (jawall@ktjlaw.com)
Anthony G. Becknek (agbecknek@ktjlaw.com)
Colleen M. Shannon (cmshannon@ktjlaw.com)
Klein, Thorpe and Jenkins, Ltd.
120 South LaSalle Street, Suite 1710
Chicago, Illinois 60606

(312) 984-6400